# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,    :    Case No. 1:02-cr-007

                                      Chief Judge Susan J. Dlott
  - vs -                           Magistrate Judge Michael R. Merz

CLAYTON LEE WAAGNER,

                Defendant.    :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 91). On the Court's Order (Doc. No. 93), the United States has filed a Response in Opposition (Doc. No. 97) and Defendant has filed a Reply in Support (Doc. No. 101).

Waagner pleads the following grounds for relief:

**Ground One:** Petitioner erroneously sentenced as armed career criminal.

**Ground Two:** 18 U.S.C. § 924(e) [is] unconstitutional

**Ground Three:** Illegal sentencing enhancements in light of *Alleyne*

**Ground Four:** Multiplicity of sentence

**Ground Five:** Violation of Sixth Amendment right to counsel (*Faretta* violation)

**Ground Six:** Actual Innocence

1

(Motion, Doc. No. 91).

**Procedural History**

Waagner was indicted by the grand jury on six counts:  (1) being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); (2) being a fugitive from justice in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(2) and 924(e)(1): (3) knowingly possessing a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); (4) being a convicted felon in possession of a stolen firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); (5) being a fugitive from justice in possession of a stolen firearm in violation of 18 U.S.C. §§ 922(g)(2) and 924(e)(1); and (6) possessing a stolen motor vehicle in violation of 18 U.S.C. § 2313(a) (Indictment, Doc. No. 13).  Counts 1, 2, 4, and 5 carried an armed career criminal specification.  *Id.*

After a *Faretta v. California*, 422 U.S. 806 (1975), hearing, the Court permitted Waagner to proceed *pro se* and appointed Assistant Federal Public Defender Kelly Johnson as standby counsel (Order, Doc. No. 24).  Waagner moved to remove the armed career criminal specification from determination by the jury (Doc. No. 33) and the parties eventually stipulated that he was a previously convicted felon and a fugitive from justice as of December 5, 2011 (Stipulation, Doc. No. 39).

After trial the jury found Waagner guilty on all counts. After considering a Presentence Investigation Report, the Court determined that Waagner was an armed career criminal and sentenced him to 235 months imprisonment on counts 1, 2, 4, and 5, and 120 months on counts 3 and 6, all to be served concurrently with one another but consecutively to a sentence imposed in

2

the Central District of Illinois.  Waagner appealed and the Sixth Circuit affirmed on July 14, 2004.  *United States v. Waagner*, 104 Fed. Appx. 521 (6th Cir. 2004).

Waagner did not seek review by the Supreme Court.  He filed his First Motion Under [28] U.S.C. § 2255 to Vacate and Correct Sentence in this Court January 14, 2014.  On the Court's Order, the Government answered on May 15, 2014 (Doc. No. 97) and Waagner filed his Reply on June 27, 2014 (Doc. No. 101).

## Analysis

**Statute of Limitations**

The Government claims the § 2255 Motion is barred in its entirety by the one-year statute of limitations adopted in the Antiterrorism and effective Death Penalty Act of 1996.  28 U.S.C. § 2255(f) provides

> A one-year statute of limitations shall apply to a motion under this section.  The limitations period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

>        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Because the Sixth Circuit affirmed the convictions here on July 14, 2004, they became final on direct review ninety days later on October 12, 2004, when Waagner's time to petition for a writ of certiorari expired. The one-year statute thus expired October 13, 2005. *Clay v. United States*, 537 U.S. 522, 525 (2003). Unless Waagner can bring one or more of his claims within a different subsection of § 2255(f), they are barred by § 2255(f)(1) because he did not file until more than eight years after the statute expired.

Waagner asserts that "[a]mong the issues raised herein are claims raised under § 2255(f)(3) of intervening changes in judicial law, including the United States Supreme Court's decisions in *Descamps* and *Alleyne*, Petitioner contends that both cases should be applied retroactively." (Motion, Doc. No. 91, PageID 21.) Thus Waagner claims to come within § 2255(f)(3).

Waagner purports to bring Ground One under *Descamps v. United States*, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013) (Motion, Doc. No. 91, PageID 21-33). He asserts in Ground Two that 18 U.S.C. § 924(e) is unconstitutional is also based on *Descamps* which he argues provided the "final straw" to prove 18 U.S.C. § 924(e) is void for vagueness. *Id.* at PageID 34-37.

Waagner next claims his sentence is above the statutory minimum and maximum based on facts "that were uncharged in the indictment and were not heard by nor decided by the jury." *Id.* at PageID 37. He alleges this is in violation of *Alleyne v. United States*. 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

In his Fourth Ground for Relief, Waagner asserts he was sentenced multiply for a single offense, violating Double Jeopardy protections as recognized in *Bell v. United States,* 349 U.S. 81 (1952). In his Fifth Ground for Relief he claims he was unconstitutionally permitted to represent himself when he was incompetent to do so, in violation of the Sixth Amendment as recognized in *Faretta v. California,* 422 U.S. 806, 835 (1975).

Although the Motion was filed within one year of the decisions in *Descamps* and *Alleyne*, even if those cases recognized new rights retroactively applicable on collateral attack, that would not bring Grounds Four and Five within § 2255(f)(3). That is to say, by its language § 2255(f)(3) is limited to claims of rights made retroactive, not all claims in motions which contain, *inter alia*, claims of rights made retroactive. Timeliness under the AEDPA must be analyzed on a claim-by-claim basis. *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007).

To excuse his delay on Grounds Four and Five, as well as providing a backup to his 2255(f)(3) assertion, Waagner claims he is entitled to equitable tolling of the statute on all five claims due to mental illness (Reply, Doc. No. 101, PageID 1134). Finally, Waagner argues he is actually innocent of being an armed career criminal under 18 U.S.C. § 924(e) and asserts this also excuses his delay in filing under *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013)(Motion, Doc. No. 91, PageID 46-47.)

Each of Waagner's arguments on timeliness will be examined in turn.

**§ 2255(f)(3)**

A predicate to the application of § 2255(f)(3) is that the Supreme Court initially recognize a right and make it retroactive to cases pending on collateral review. The United

States argues *Descamps* did not recognize a new right. Indeed, the Court held its decision was governed by its prior decisions in *Taylor v. United States,* 495 U.S. 575 (1990); *Shepard v. United States*, 544 U.S. 13 (2005); *Nijhawan v. Holder*, 557 U.S. 29 (2009); and *Johnson v. United States*, 559 U.S. 133 (2010). Waagner makes no response to this argument. § 2255(f)(3) does not make his Grounds One and Two timely.

Ground Three which relies on *Alleyne, supra*, is also not made timely by § 2255(f)(3) because *Alleyne* does not apply retroactively. *Rogers v. United States*, 561 Fed. Appx. 440 (6th Cir. 2014); *United States v. Reyes*, 755 F.3d 210 (3rd Cir. 2014); *United States v. Redd*, 735 F.3d 91 (2nd Cir. 2013); *United States v. Hoon*, ___ F.3d ___, 2014 U.S. App. LEXIS 15408 (10th Cir. 2014); *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *Simpson v. United States,* 721 F.3d 875 (7th Cir. 2013).

**Actual Innocence**

Waagner asserts that his § 2255 Motion is timely because he is actually innocent of being an armed career criminal under 18 U.S.C. § 924(e).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence"

6

> purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1035 (2013).

The Sixth Circuit has specified requirements for an actual innocence showing:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Waagner has presented no new evidence of his actual innocence of the armed career criminal specification. What he has done is to reargue the applicability of the predicate criminal

7

convictions under his interpretation of *Descamps*. If *Descamps* were applicable and Waagner's interpretation of it were correct, he might have shown legal innocence, but not factual innocence. See *Bousley, supra*. Waagner has not shown that the *Schlup* actual innocence "gateway" applies to excuse his delay.

**Equitable Tolling**

Finally, Waagner asserts the time for filing should be equitably tolled by his mental illness.

Waagner claims he became delusional as a result of the stillbirth of a granddaughter in 1999. He began to claim that God had told him to become a warrior against abortion in this country and that he committed the long string of criminal offenses from that time until his successful capture in this case under the control of that delusion, including the time he was in escape status on prior charges in the Central District of Illinois.

Waagner reports that he was diagnosed with Adjustment Disorder with Disturbance of Emotions and Conduct (Chronic), Delusional Disorder (Grandiose Type), and Adult Antisocial Behavior on Axis I and Antisocial Personality Disorder on Axis II by Dr. Daniel Greenstein, a clinical psychologist employed at the time of the evaluation by the Federal Bureau of Prisons. At his trial in the Central District of Illinois, Dr. Greenstein testified to the results of his examination in February 2000 in support of Waagner's claim that he was not guilty by reason of insanity. The jury rejected that defense and when Waagner escaped prior to sentencing, he committed serious criminal activities directed at least in part at those associated with providing abortions.

On appeal from the Illinois conviction, Waagner asserted error in the jury's rejection of his insanity defense. The Seventh Circuit held

> It is, of course, certainly not surprising that someone who claims to hear bizarre commands from God and then embarks on a massive crime spree has more than a few mental problems. And Waagner did. This became clear when he filed a notice of intent to raise an insanity defense to the charges against him. After filing his notice, the government requested a psychiatric examination, and Waagner was evaluated by Dr. Daniel S. Greenstein, a clinical psychologist whose diagnosis was adjustment disorder, delusional disorder grandiose type, and antisocial personality disorder. Dr. Greenstein testified at Waagner's trial that the diagnoses of adjustment disorder and antisocial personality disorder were not severe mental diseases or defects. However, he testified that **[\*\*3]** Waagner's "delusional disorder grandiose type" is a severe mental disease and that he would not necessarily be able to appreciate the wrongfulness of his actions. The insanity defense primarily rested on this opinion, but the jury didn't buy it, as Waagner was convicted on both counts.
>
> * * *
>
> In an insanity case, unlike a typical challenge to the sufficiency of the evidence, the defendant's burden is even greater. At trial, it is the defendant, not the government, that must carry the burden of proving insanity (which is an affirmative defense) by clear and convincing evidence. 18 U.S.C. § 17(b). Because, under 704(b) of the Federal Rules of Evidence, legal insanity is a question to be decided by the trier of fact, the finding here by the jury may not be disturbed unless it is clearly erroneous. *United States v. Reed*, 997 F.2d 332, 334 (7th Cir. 1993).
>
> To succeed on an insanity defense, a defendant must prove that as the result of a severe mental disease or defect he was unable to appreciate the nature and quality or wrongfulness of his acts. 18 U.S.C. § 17(a). So the question becomes, what was the evidence the jury considered, and was it so one-sided that any decision except a finding of not guilty by reason of mental defect must be cast aside? We think not.

Dr. Greenstein offered the only expert opinion evidence in this case. But on cross-examination, the doctor testified that whether Waagner even had a delusional disorder was a very close call, made more difficult because it involved religious beliefs. He noted that a person would not necessarily be delusional simply because the person believed, based on strongly held religious beliefs, that killing abortion doctors was morally justified. Because it was a close call, Dr. Greenstein testified that he felt ethically obliged to err in favor of diagnosing Waagner with a delusional disorder. Plus, the doctor candidly acknowledged that on the same facts a different psychologist might come to a different conclusion.

Dr. Greenstein's equivocal testimony is not surprising given that none of the objective evidence pointed very strongly toward a finding that Waagner had a severe mental disorder. Likewise, the diagnosis was further drawn into question because Waagner, despite an extensive criminal record, had no recorded history of psychiatric illness.

Dr. Greenstein's diagnosis of delusional disorder is even more dubious given that his evaluation was based mainly on Waagner's own self-reported, and we think self-serving, statements. Dr. Greenstein did not interview any other persons regarding Waagner's mental condition. Indeed, the evidence showed that Waagner failed to mention the "voices" he heard to others, particularly his wife, son, and a partner in crime who testified for the government and said he never observed Waagner acting irrationally. Likewise, various officers testified that they had no difficulty communicating with Waagner, that he acted rationally, responded to their questions, never appeared distracted, and never mentioned abortion or abortion clinics to them. And so, the evidence that Waagner suffered from a severe mental disease or defect when he committed his crimes was far from clear and convincing. In fact, it seems to us that the jury reached the correct result, not only one that was not clearly erroneous.

But even if the evidence of a disqualifying mental disorder was stronger, Waagner would still be a long way away from steering his boat into the acquittal harbor. That's because the mental

disorder question is the lesser of two things to be proved to carry the affirmative defense of insanity. He had to prove that his criminal conduct was the result of his mental disorder, not the result of something which seems more likely in this case, an antisocial personality disorder. Even if he truly believed that he was "God's warrior" against the abortion industry, that does not mean that his criminal conduct was a result of his delusions. Regarding his possession of the stolen motor vehicle, Waagner admitted that God never told him to steal a vehicle, let alone a Winnebago motor home. He further admitted that he needed a big vehicle because of his large family, that the Winnebago fulfilled that purpose, and that he was not going to drive to an abortion clinic with his wife in the Winnebago. Regarding his possession of the firearms, he also admitted that God did not specifically tell him that he needed to steal a Beretta .22 caliber pistol during a burglary.

Waagner also admitted that he had committed the crimes of unlawful possession of a firearm by a felon and possession of stolen goods in 1993, at least a half dozen years before his alleged delusions struck home. Therefore, a jury could reasonably conclude that Waagner, who admitted committing these very crimes without God's urging, possessed the firearms and the stolen Winnebago as a result of either a desire to remain a fugitive, or as a result of his antisocial personality disorder, or both, and not because he was in the grip of some bizarre delusions.

Finally, it seems to us that the evidence was overwhelming that Waagner appreciated the wrongfulness of his conduct. First, he gave the arresting Illinois state trooper false identification, and he lied about how he happened to be driving the Winnebago. Later, after confessing, he even asked the trooper if he could work out a deal. He was also selective in what he would discuss, declining to talk about his involvement in a Kentucky armed robbery. This all points to a man who knew he was in a jam and wanted to avoid, or minimize if possible, his criminal liability. This is not the stuff of a man whose actions are uncontrollable because of a severe delusional disorder.

In the face of all this evidence, and a lot of additional evidence we

11

have not discussed (for instance, in 1999 he chose not to try to murder a doctor when a police officer arrived at an abortion clinic), Waagner's primary argument seems to be that he should win on the issue because the government "failed to present any expert testimony. " Given the nature of Dr. Greenstein's testimony and the other evidence of Waagner's sanity at the time of the offense, the government was not required to present any expert testimony of its own. *United States v. Bennett*, 908 F.2d 189, 195 (7th Cir. 1990) ("The government is not required to rebut expert testimony with its own expert as it may accomplish the same result by presenting lay witnesses and other evidence and by undermining the defense expert's credibility through cross examination."). There was, in other words, no need for the government to get its own expert and bog the trial down to what often happens in cases like this--a "battle of experts" before a jury of lay people. Reviewing the entire record in this case, we conclude that the jury did not err, let alone clearly err, in finding that Waagner failed to prove the affirmative defense of insanity by clear and convincing evidence.

United States v. Waagner, 319 F.3d 962, 963, 964-66 (7th Cir. 2003).

When tried in this case, he did not again plead not guilty by reason of insanity, but instead sought to rely on the defense of necessity. This Court rejected that defense but Waagner argued it to the jury anyway. Represented by counsel, Waagner unsuccessfully pursued the necessity defense on appeal.

In addition to relying on his mental illness to excuse his delay in filing, Waagner relies on it substantively in Ground Five to prove that he was not competent to waive representation by counsel. During the *Faretta* hearing before Judge Weber, Assistant Federal Public Defender W. Kelly Johnson represented to the Court:

> [A]t the time [when Waagner was convicted in Illinois] that he was being represented by counsel, the defense that was presented at trial was a not guilty only by reason of insanity defense. Although that was the defense that was presented, that was not a successful defense in the Central District of Illinois. And I have been provided with reports from the Federal Medical Center that did

12

> psychiatric evaluations that found him, one, competent to stand trial, and, two, sane at the time he committed the offenses in the Central District of Illinois.
>
> I have had conversations with Mr. Waagner. I have no reason to believe that he is not competent to represent himself in this matter.

(Transcript of Hearing of March 4, 2002, Doc. No. 96, PageID 85-86.)

Despite the jury conclusion and that of the Seventh Circuit, Waagner still claims any "reasonable juror would conclude that Petitioner acted under the control of this disorder for years." (Reply, Doc. No. 101, PageID 1136). There has been, however, no psychological evidence produced since Dr. Greenstein's evaluation which concludes Waagner was "controlled" by his delusions, either in committing the crimes that cause his conviction here or in insisting on defending himself and arguing necessity at trial.

Even if Waagner was at some time sufficiently mentally ill that he felt compelled to assume the stance of God's warrior against abortion, he does not explain how that illness would have kept him from filing a timely § 2255 motion. In fact, even by his own account, he experienced a "change of heart" at least by the time he was contacted by the Discovery Channel for an interview in early 2011 (Motion, Doc. No. 91, PageID 48-49.) In fact, in his letter to Planned Parenthood of May 2, 2011, which he claims the Bureau of Prisons prevented him from sending, he writes:

> In late 2009 I admitted to my wife and children that I had been wrong in all that I had done. Inspired by the rants of one of my peers, in April of 2010 I sent a letter to an extremist newsletter sharing my new conviction and encouraged nonviolence.

(Petition, Doc. No. 91-1, PageID 54.)

The Sixth Circuit has held

> A petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations. To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations. In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required. See *McSwain [v. Davis]*, 287 F. App'x at 456 [(6th Cir. 2008)].

*Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011).

In sum, Waagner has not proven he was ever insane or incompetent. But even while he was allegedly controlled by his delusions, Waagner took many acts in his own defense in this case. And then, after he stopped being controlled by the delusions in late 2009, it still took him more than four years to file the instant Motion.

**Conclusion**

Because Waagner's Motion is barred by the statute of limitations, it should be dismissed with prejudice. Given that conclusion, the Court need not decide the Government's defense of procedural default or the merits of Waagner's claims. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

August 18, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).